<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ANTHONY MASSARI | : | |
| | : | Civil Action No. 03-1996 (FLW) |
| Plaintiff | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SALEM COUNTY PROSECUTOR'S OFFICE | : | |
| | : | |
| Defendant | : | |

APPEARANCES:

RICHARD F. KLINEBURGER, III
Klineburger & Nussey
38 Haddon Avenue, Suite 100
Haddonfield, NJ 08033

THOMAS W. SUMNERS JR.
Sumners George, P.C.
849 West State Street
Trenton, NJ 08618

**WOLFSON, United States District Judge**

This matter comes before the Court on the Motion for Summary Judgment of Defendant

Salem County Prosecutors Office ("SCPO"), John Doe Investigators (1-5), and John Doe

Prosecutors (1-5) pursuant to <u>Fed. R. Civ. P.</u> 56.[1]  Plaintiff Anthony Massari asserts claims for

---

[1]On May 3, 2005, Plaintiff entered into a consent order with Defendants Pennsville Township, the Pennsville Township Police Department, Patrol Officer Acton, and Patrol Officer Cummings, dismissing them from the action with prejudice.  The only other remaining Defendant in this action, Defendant Salem County, has not moved for summary judgment at this time.

violation of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, as well

as a common law claim of "negligence."  This Court has jurisdiction over Plaintiff's claims

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  For the reasons discussed herein, the Court

grants the Defendants' Motion in its entirety.

## I.      BACKGROUND

This case arises out of the May 2, 2001 Indictment of Plaintiff by the Salem County

Grand Jury on two counts of third degree theft in violation of N.J.S.A. 2C:20-3.  Exh. B to

Plaintiff's Motion for Summary Judgment ("Pl. Exh.").  The Indictment charged Mr. Massari

with unlawfully taking or exercising unlawful control over the moveable property of T.E.

Warren, Incorporated ("Warren Inc."), with a value of more than $500.00, on or about February

2, 2001, and February 20, 2001.  Id. at 4:5-23.  Plaintiff filed the instant Complaint on May 2,

2003, claiming that SCPO falsely and maliciously prosecuted Plaintiff even though it knew or

should have known that there was no probable cause to indict him, and that neither he nor his

counsel were made aware of the grand jury proceedings nor given the opportunity to testify.

Warren, Inc., a crane rental business, was owned by Mr. Threaston E. Warren, Jr.

Plaintiff entered into an Asset Purchase Agreement ("Agreement") with Warren on April 7,

2000.  Def. Exh. A1.  Pursuant to the Agreement, Plaintiff paid $500,000 for real property in

Pennsville Township owned by Mr. Warren, and some of the equipment that was on the property.

Id. at ¶ 1.2; ¶ 3.1.  Paragraph 13.1 of the Agreement provides that the Agreement and the other

instruments executed by the parties in connection with the transaction "constitute the sole

understanding of the parties with respect to the subject matter hereof," and that "[n]o

amendment, modification, or alteration of the terms or provisions of this Agreement shall be binding unless the same shall be in writing and duly executed by the parties hereto." Id. at ¶ 13.1.  Despite this provision, Warren claims that there was a subsequent "Gentleman's Agreement" which stipulated that Warren could leave some of his equipment on the property for up to a year.  Pl. Exh. B at 10:5-19.  In addition, Warren claims that he agreed to rent some of this non-purchased equipment remaining on the property to Plaintiff at Plaintiff's request.  Id. at 14:6-7.  Warren retained possession of a parcel of land immediately adjacent to the property that he sold to Plaintiff, and therefore was able to observe activities taking place on Plaintiff's land. Pl. Exh. E at 6:10-13; 14:20-22.

 In the months following the Agreement, Warren began removing some of his property. Id. at 11:18-19.  Warren claimed, however, that Plaintiff ceased to allow Warren access to the property to remove the rest of his equipment beginning in November 2000.  Id. at 35:12-18. Warren believed that Plaintiff was stealing the equipment that Warren was not allowed to remove, and was selling it for scrap.  Warren testified before the Grand Jury that on February 2, 2001, approximately 20-25 aluminum vaporizers, worth over $5,000.00, had been removed from Plaintiff's property, and was "concerned" that they were sold for scrap.  Id. at 16:11-17; 20:12.

Shortly thereafter, Warren observed a dumpster on Massari's property which allegedly contained crane parts owned by Warren.  Id. at 21:3-10.  On Februrary 20, 2001, Warren observed the dumpster being hauled off the property.  He immediately contacted Charles Miller, Chief of Detectives at the Salem County Prosecutor's Office, to report that employees of Plaintiff were loading his property into a dumpster, and that he wanted to sign complaints for these activities.  Pl. Exh. D at 10:3-19.  Miller testified that he advised Warren to contact the

Pennsville Police Department, but did not recall contacting the Police Department himself.  Id.
10:22-11:2; 13:1; 14:11-12.

After calling Miller, Warren called the Pennsville Police Department and reported that he
had flagged down a truck hauling a dumpster that contained property that he believed had been
stolen from him, and Officer Greg Acton was sent to investigate.  Pl. Exh. B at 22:21-23; Pl.
Exh. C at 19:3-15.  Acton testified that Miller also had called the Pennsville Police Department
to respond to the scene.  Id. at 23:5-11.  Acton testified that soon after he arrived, Detective
Cummings from the Pennsville Police Department also came to the scene, as well as Chief
Miller.  Id. at 22:17-21.  Miller testified at his deposition that he went to the location where the
truck was stopped, approximately a mile and a half from the properties owned by Warren and
Massari.  Id. at 30:24-31:6.  Miller did not recall whether he stopped by out of curiosity, or
whether he "stumble[d]" upon it, but did not come to the Massari property to conduct an
investigation, and took no official action at the scene.  Id. at 11:5-17; 12:12-13:1.  The
investigation was under the control of the Pennsville Police Department at all times, and Miller
was on the scene "for two minutes at the most."  Id. at 21:20-21; Pl. Exh. H at 72:17-18.

Acton testified that although he believed that the dispute constituted a civil matter, and
would therefore not sign a criminal complaint himself, Warren was "adamant" about signing a
complaint.  Id. at 32:8-16; 34:8-21.  Acton therefore escorted Warren to the clerk's office, where
Warren signed complaints relating to the equipment in the dumpster and the February 2, 2001
incident.  Id. at 34:20-21; Pl. Exh. B at 23:6-7.  Acton served the Complaint on Massari that day.
Pl. Exh. C at 38:20.  Mr. Massari came to the police station, where he was fingerprinted and
photographed because the charges were indictable.  Id. at 40:5-6.  At that time, he told Massari

4

that the complaint would be forwarded to the SCPO for presentation to the Grand Jury, and that he should contact his attorney. Id. at 40:8-20. Miller became aware of the complaints being filed when Massari was arrested. Id. at 22:23-23:3.

Jon Reilly, an assistant prosecutor, presented the case against Massari to a Grand Jury on May 2, 2001. Pl. Exh A; Pl. Exh. F at 9:9-10. Reilly was given the file on the morning that he presented the case to the Grand Jury. Pl. Exh. F at 10:4-5. The case had been screened by the First Assistant Prosecutor, William Brennan, before being handed to Mr. Reilly. Brennan testified that in a case in which the alleged victim, rather than a police officer, is the one who files the complaint, it would still be sufficient to present a case to the Grand Jury based only upon the police report and the testimony of the police officer and the alleged victim. Pl. Exh. H. at 29:19-20. However, it is SCPO protocol that if an attorney indicates that his or her client wants to testify in front of the Grand Jury, a note is made in the file to have the defendant come in and testify. Pl. Exh. H at 11:3-7. Plaintiff testified that Christine Campbell, his attorney at the time of the indictment, told him on the day of the indictment that she had tried earlier that day to get Plaintiff to testify in front of the Grand Jury that afternoon, but had not been allowed to do so. Pl. Exh. E at 84:20-23.

Plaintiff also alleges that although his Counsel sent correspondence to SCPO dated July 23, 2001, as well as filing two Motions to Dismiss dated October 9, 2001 and November 9, 2001, respectively, which allegedly contained proof that the alleged stolen property did not belong to Mr. Warren, the SCPO did not immediately dismiss the indictment. The Indictment was dismissed by The Hon. William L. Forester, J.S.C., on December 17, 2001.

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as  to any material fact and the moving party is entitled to judgment as a  matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317,  323 (1986).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support thereof.  Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290 (1968)).  In evaluating the evidence, the Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party."  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)).

### B.     Fictitious Party Pleading

The Court notes at the outset the poorly pled allegations in the Complaint that relate to SCPO.  The Complaint's caption lists three sets of fictitious parties:  John Doe Officers (1-5); John Doe Investigators (1-5); and John Doe Prosecutors (1-5).  Defendant SCPO also has moved for summary judgment on behalf of  "John Doe Investigators (1-5)" and "John Doe Prosecutors (1-5)."

Under the Heading "Parties," ¶ 5 states:

Defendant, Salem County Prosecutor's Office, were at all times relevant employees of the County of Salem.  At all times herein mentioned, defendant Salem County Prosecutor's Office were acting under the color of law and authority as an officer of the defendant, Salem County.

6

In this paragraph, Plaintiff's use of the plural "were," and description of this "party" as "employees" and as an "officer of the defendant, Salem County" appears to indicate that Plaintiff has brought the instant action not against SCPO as an entity, but rather as against individual employees of SCPO. Because Plaintiff has nowhere asserted any claims against John Doe Investigators or Prosecutors anywhere else in the Complaint, the Court assumes that these are the fictitious names of the "employees" and "officer[s]" referred to in ¶ 5, and Plaintiff's claims against SCPO are brought only against these John Doe Investigators and Prosecutors.[2]  Also supporting this assumption is that Plaintiff appears to recognize that SCPO is not a government entity which can be sued under § 1983 separate from the individual who is the county prosecutor or the governmental entity that the county prosecutor serves, and that the County of Salem is therefore the appropriately named party for a suit against SCPO as an entity. See Complaint ¶ 26-28; Briggs v. Moore, 2005 WL 1076059, at *4 (D.N.J. May 5, 2005) (collecting authority).[3]

---

[2] Plaintiff's failure to separately assert claims against the John Doe Investigators and Prosecutors is in contrast to his treatment of the John Doe Officers (1-5), defined in ¶ 4 of the Parties section as employees of the Pennsville Police Department. The Court notes that the May 3, 2005 Stipulation of Dismissal as to the Pennsville Township, the Pennsville Township Police Department, Patrol Officer Acton and Patrol Officer Cummings does not include the John Doe Officers (1-5), defined as "employees of the Police Department of defendant, the Township of Pennsville." Complaint at ¶ 4. Although the Court assumes that the John Doe Officers (1-5) were inadvertently omitted from this stipulation, for the reasons discussed herein, the Court will *sua sponte* grant summary judgment to the John Doe Officers (1-5). See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); Gibson v. Mayor and Council of the City of Wilmington, 355 F.3d 215, 224 (3d Cir. 2004) (presence of a fully developed record, the lack of prejudice, and a decision based on a purely legal issue all provide basis for grant of summary judgment *sua sponte*).

[3] The names "John Doe Investigators (1-5)"; and "John Doe Prosecutors (1-5)," are utilized only in ¶27 with respect to the alleged negligence of defendant Salem County for failure to train these employees. Paragraphs 26-28 read in full:

26.     Defendant, The County of Salem, as a matter of policy and practice failed to discipline,

Salem County is represented by separate counsel and, as noted, has not moved for summary judgment here.  Because the Court finds that Plaintiff was never entitled to the benefit of New Jersey's rule permitting fictitious party pleading, and no individual employees have been given the appropriate notice of Plaintiff's claims against them, it will dismiss the claims against all individual employees of SCPO.

N.J. Civ. Prac. R. 4:26-4 provides, in pertinent part,

[i]n any action, ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him.  Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name, such motion to be accompanied by his affidavit stating the manner in which he obtained this information.

"The purpose of the rule is to render timely the complaint filed by a diligent plaintiff, who is aware of a cause of action against an identified defendant but does not know the defendant's name." Greczyn v. Colgate-Palmolive, 183 N.J. 5, 11 (2005) (citations omitted).  "[T]he rule will not protect a plaintiff who had ample time to discover the unknown defendant's identity before the running of the statute of limitations." Id. (citations omitted).  The identification of a

---

train or otherwise sanction investigators or prosecutors who violate the rights of citizens, including plaintiff thus encouraging defendants in this case to engage in the unlawful and actionable conduct described above.

27.   Defendant, The County of Salem, as a further matter of policy and practice failed to train properly its investigators and prosecutors, including defendants Investigators and Prosecutors John Does (1-5) in this case, with respect to the constitutional, statutory and departmental limits of their authority.

28.   At all times herein mentioned, the defendant investigators and prosecutors were acting as the agents, servants and or employees of the defendant and therefore, their acts are attributable to defendant, County of Salem.

defendant by a fictitious name pursuant to Rule 4:26-4, may be used "only if a defendant's true name cannot be ascertained by the exercise of due diligence prior to filing the complaint." Claypotch v. Heller, Inc., 360 N.J. Super 472, 479-80 (App. Div. 2003) (citations omitted). See also Younger v. Kracke, 236 N.J. Super 595, 597 (Law Div. 1989) (holding that plaintiffs' failure to obtain a police report, which would have disclosed the name, address, and insurance company of all of the drivers in an automobile accident, constituted a lack of diligence which precluded use of the fictitious name procedure authorized by Rule 4:26-4).

Here, Plaintiff has no excuse for failing to name the employees of SCPO that it claims played an active role in falsely and maliciously prosecuting Plaintiff. As of May 2, 2001, or shortly thereafter upon receipt of the transcript from the Grand Jury proceedings, Plaintiff was or could have been aware that, as argued in his opposition to Defendant's Motion for Summary Judgment, Reilly was the SCPO attorney who presented the case to the Grand Jury, and Chief Miller appeared at the scene of the Pennsville Police Department's investigation of the dumpster incident. Plaintiff also could have easily ascertained the names of Brennan or any other SCPO supervisor that dealt with the incident between Plaintiff and Warren in some capacity. Plaintiff's failure to do so forces the Court to play guessing games as to which SCPO employees he asserts liability for the various alleged offenses described, and more importantly, fails to put these employees on sufficient notice of the claims against them.

Statutes of limitations are intended (1) to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and (2) to "penalize dilatoriness and serve as a measure of repose" in fairness to defendants. Rivera v. Prudential Prop. & Cas. Ins. Co., 104 N.J. 32, 39

(1986) (citations omitted).

In § 1983 actions, the relevant statute of limitations is provided by the applicable state statute. Michaels v. State of New Jersey, 955 F. Supp. 315, 322 (1996) (citing Wilson v. Garcia, 471 U.S. 261, 280 (1985)). Where a state has a statute of limitations for certain enumerated intentional torts as well as a residual statute for all other personal injury actions, the residual statute should be applied to § 1983 claims. Id. (citing Owens v. Okure, 488 U.S. 235, 249-50). In analyzing New Jersey's statutes of limitations under Wilson and Owens, the Third Circuit held that § 1983 claims are governed by New Jersey's two year statute of limitations for personal injuries, N.J.S.A. 2A:14-2. Id. at 322-23 (citing Cito v. Bridgewater Township Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989)).[4]

Plaintiff's § 1983 claim accrued, and the statute of limitations began to run, upon the termination of the criminal proceeding in favor of the accused. Id. (citing Heck v. Humphrey, 512 U.S. 477 (1994)). Here, that date was December 17, 2001, the date that the Indictment was dismissed. The Court cannot find that the Plaintiff was unable to ascertain the identities of the

---

[4]The Court must again mention Plaintiff's poorly drafted Complaint. The Complaint lists three counts. Count I is styled "False Arrest and False Imprisonment, Section 1983, Civil Rights Act." Count II is entitled "Deprivation of Federally-Protected Rights, 4th and 14th Amendments." Count III is entitled "Negligence." Section 1983 affords Plaintiff remedies for any constitutional violations that can be established. Rogin v. Bensalem Township, 616 F.2d 680, 686-87 (3d Cir. 1980). Thus, Counts I and II are inappropriately pled as separate counts. Moreover, Plaintiff's "Negligence" count is comprised solely of allegations that track the language required to support municipal liability pursuant to § 1983. Thus, Count III does not allege any common law violations. In its Motion for Summary Judgment, SPCO moves for summary judgment as to Plaintiff's common law claim for malicious prosecution. However, the Court does not find a common law claim for malicious prosecution in the Complaint. The Court therefore does not need to perform a separate statute of limitations analysis as to any common law claims, because none exist in the Complaint.

relevant SCPO employees and file a complaint naming them as Defendants prior to December 16, 2003, for any reason other than the lack of diligence.  Because the Court finds that Plaintiff has failed to meet the requirements for the invocation of Rule 4:26-4, it will dismiss Plaintiff's claims against the SCPO employees as time-barred.

### B.    Absolute Immunity

Even if Plaintiff had appropriately named the individual SCPO employees, these employees would be entitled to absolute immunity for the allegations against them.  Prosecutors retain absolute immunity from liability at common law and under § 1983 for their conduct in "initiating a prosecution and presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process."  Imbler v. Pachtman, 424 U.S. 409, 430-31 (1975).   In Imbler, the Supreme Court held that prosecutors' common-law immunity from suits for malicious prosecution and defamation should be extended to suits arising under § 1983 because of its "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."  Id. at 423. Concluding that "qualifying a prosecutor's immunity would disserve the broader public interest," the Court decided that in the "'balance between the evils inevitable in either alternative'" it would be "'better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.'"  Id. at 427-28 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949) (Hand. J.)).

Plaintiff alleges that "despite the facts [sic] that Plaintiff has given the Defendant's [sic]

statements and proof that he did not engage in criminal activity, the Defendants still presented evidence they knew or should have known to be false to the Grand Jury," and that they failed to investigate any of the information provided by Plaintiff.  Id. at ¶¶ 12, 13.[5]  Plaintiff asserts that the following facts support the liability of the unnamed SCPO employees[6]: (1) although the SCPO file on the matter contained approximately 200 pages, the only evidence presented to the Grand Jury was a photograph of Warren's property and a facsimile sent by Plaintiff to Mr. Warren on November 3, 2000; (2) that the only testimony heard by the Grand Jury was that of Warren and Acton, and Mr. Massari was not made aware of the Grand Jury hearing nor invited to testify, in contrast to SCPO protocol; (3) that there was no independent investigation by the SCPO prior to the presentation of the evidence to the Grand Jury, including into Mr. Warren's proof of ownership; and (4) SCPO failed to dismiss the charges upon Plaintiff's counsel filing two motions to dismiss along with alleged proof that the property in question did not in fact belong to Mr. Warren.

All of these allegations pertain to SCPO prosecutors' conduct that is "intimately associated with the judicial phase of the criminal process."[7]  The "professional evaluation of the evidence

---

[5]It is unclear whether Plaintiff is intending to assert ¶ 13 solely against the Pennsville Defendants, or also against the SCPO employees.

[6]As noted in the preceding section, it is unclear which of the SCPO employees Plaintiff is intending to assert is liable for each of the alleged violations.

[7]The Court notes that Plaintiff also alleges claims against SCPO employees based upon Plaintiff's indictment resulting from "an investigation conducted by the Pennsville Police Department and Salem County Prosecutor's Office."  Compl. ¶ 11.  Although it is not at all clear from the Complaint, Plaintiff's Opposition to SCPO's Motion for Summary Judgment and accompanying Statement of Material Facts indicate that Plaintiff intends to allege more than that SCPO "failed to investigate any of the leads given by Plaintiff." Compl. ¶ 13.  Rather, Plaintiff also appears to argue that Chief Miller violated Plaintiff's constitutional rights in his

assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made" is entitled to absolute immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  Moreover, "a prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred."  Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992).  Thus, both Brennan's initial screening of the case for presentation to the Grand Jury, and Reilly's decision to proceed once the case was assigned to him, were actions for which both prosecutors are entitled to immunity.  SCPO prosecutors' failure to acknowledge allegedly exculpatory evidence, including their failure to allow Plaintiff to testify on his own behalf in front of the Grand Jury, is within the ambit of their role as advocate for the State that is protected by absolute immunity.  Imbler, 424 U.S. at 431 n. 34.  See also Savage v. Bonavitacola, 2005 WL 568045, at *12 (E.D.Pa. Mar. 9, 2005) (collecting authority).  Finally, Plaintiff's allegation that the SCPO prosecutors failed to properly investigate the matter before initiating the prosecution is also conduct within the scope of absolute immunity.  Schrob v. Catterson, 948 F.2d 1402, 1411 (3d Cir. 1991) (citations omitted).

## III.    CONCLUSION

---

"investigation" of the February 20, 2001 dispute after receiving a phone call from Warren. Unlike prosecutors, investigators and police officers are not entitled to absolute immunity, but rather only qualified immunity from liability for damages.  Malley v. Briggs, 475 U.S. 335, 340 (1986).  However, the Court need not engage in a qualified immunity analysis, as Plaintiff has adduced no facts demonstrating that Chief Miller or any other SCPO employee in fact investigated this matter prior to the Indictment.  Miller testified that he "did nothing involving this case whatsoever" for the Salem County Prosecutor's Office, and that it "wasn't [his] investigation."  Id. at 24:5-6.   In addition, Reilly testified that SCPO only became involved in investigating the case following the indictment, and the investigation was done by an investigator named Greg Weber.  Pl. Exh. F. at 24:14-24.

13

Because Plaintiff has failed to name the individual SCPO defendants, and is not entitled to the benefit of New Jersey's fictitious party pleading rule, his claims against these defendants are time-barred.  However, even if Plaintiff had properly named the individual SCPO prosecutors such that his claim against them was not barred by the statute of limitations, Plaintiff's allegations against them all pertain to prosecutorial functions for which they are immune from suit. Defendant's Motion for Summary Judgment is granted.  An appropriate order will follow.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: August 23, 2005

14